**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 13-cv-0274-WJM-BNB

WINMARK CORPORATION,

    Plaintiff,

v.

TODD A. SCHNEEBERGER, and
PATRICIA A. SCHNEEBERGER

    Defendants.

---

**ORDER GRANTING PLAINTIFF'S REQUEST FOR PRELIMINARY INJUNCTION**

---

This matter involves, *inter alia*, a dispute over a franchise agreement and several trade marks registered pursuant to the "Lanham Act", 15 U.S.C. §§ 1114 *et seq*. (ECF No. 1.) The matter is before the Court on the Motion filed by Plaintiff Winmark Corporation, Inc. ("Plaintiff" or "Winmark") for preliminary injunctive relief against Defendants Todd A. Schneeberger, and Patricia A. Schneeberger ("Defendants" or the "Schneebergers") (ECF No. 8). Defendants oppose the relief and have filed a Response[1] (ECF No. 15; ECF No. 21); Plaintiff has filed a reply. (ECF No. 16.)

Having reviewed the parties' materials, the Court grants Plaintiff's relief consistent with the discussion below.

---

[1] Defendants conceded that these filings were informal. The filings were not received through conventional ECF filing procedures. Nonetheless, the Court has construed the filings liberally, despite the second filing reiterating much of what was said in the first. (ECF No. 15; ECF No. 21)

# I. BACKGROUND

## A.   Factual Background

Plaintiff Winmark is a Minnesota corporation with its principal place of business in Plymouth, Minnesota.  (Steven A. Murphy Decl. (ECF No. 8-2), ¶ 2.)   Winmark's business includes franchising a chain of retail sporting goods stores that operate under the name Play It Again Sports® ("Winmark Stores").  (*Id.*)  The business model for the Winmark Stores is the trading of 'new and used' sports equipment.  (*Id.*)   The Winmark Stores provide a particular service to families who cannot afford new sporting equipment because children outgrow clothes or change sports activities.  (*Id.*)  There are currently more than 300 Play It Again Sports® stores in the United States and Canada, including eight in Colorado.  (*Id.*)

Effective December 31, 2002, Winmark entered into a Franchise Agreement with Choury Holdings, Inc. ("Choury") for the operation of a Play It Again Sports® store in Fort Collins, Colorado (the "Store").  (Murphy Decl. ¶ 2.)  With the consent of Winmark, Choury assigned its rights in the Franchise Agreement to the Schneebergers effective June 8, 2007.  (*Id.*) The Franchise Agreement had a term of ten years and was renewable for continuing ten-year terms upon the fulfillment of various terms.  (Ex. 1 to Murphy Decl., Exh. at ¶ 2.A-B.)

In exchange for payment of a fee of 4% of gross sales and fulfillment of other payments and obligations, the Franchise Agreement granted Defendants a limited license and franchise during the term of the agreement to use the Play It Again Sports® trademarks, service marks, and logos (the "Marks"), along with methods, procedures,

and specifications (collectively the "Business System"). (Murphy Decl., ¶ 10.) Specifically, Paragraph 3.B of the Franchise Agreement provides that "Franchisee's right to use and identify with the Marks and Business System applies only to the Franchised Location, and exists concurrently with the term of this Agreement and only so long as Franchisee is in complete compliance with Franchisor's quality standards." (Murphy Decl., Exh. at ¶ 3.B)

**B.     The Trade Marks**

Plaintiff Winmark has taken steps to protect its Marks and Business System. Winmark is the owner of the following federally registered Marks: (a) Play It Again Sports (words only), U.S. Reg. No. 1,562,785, registered October 24, 1989;  (b) Play It Again Sports (words and design), U.S. Reg. No. 1,738,778, registered December 8, 1992; (c) Sports Equipment That's Used But Not Used Up, U.S. Reg. No. 1,874,326, registered January 17, 1995;  (d) Chasing arrows (design), U.S. Reg. No. 2,550,186, registered March 1, 2002;  (e) Reuse. Reuse. Recycle. Replay. U.S. Reg. No. 3,913,486, registered on February 1, 2011.

Each of the above Marks is incontestable pursuant to 15 U.S.C. § 1065. (Murphy Decl., ¶¶  4-5.)  All rights in the Marks are vested solely in Winmark. (*Id.*)

In terms of using (and promoting the Marks), Winmark and its franchisees have spent significant amounts of money to promote Play It Again Sports® stores and the products and services sold under the Marks.  (*Id.*, ¶ 6.)  For example, in 2012, Winmark's own marketing budget for the Play It Again Sports® brand was more than $325,000, and Play It Again Sports® franchisees in the United States and Canada collectively invested more than $11 million in advertising.  (*Id.,* ¶ 7.)  In addition, the Play

It Again Sports® website generated more than 3 million visits in 2012.  (*Id.*)  As a result of this advertising, the Marks are associated in the minds of the public with their sponsor and source (Winmark), and enjoy goodwill for those stores that are permitted to use them. (*Id.*, ¶ 6.)[2]

### C.     Defendants' Franchise Agreement terminated on January 15, 2013

On April 30, 2012, Winmark sent correspondence to the Schneebergers, reminding them of the impending December 31, 2012 expiration of the Franchise Agreement.  (Murphy Decl., Exh. 3)  The letter also invited the Schneebergers to take steps to renew the Franchise Agreement, stating: "It is our intention to renew the franchise relationship we have built together, and we hope it's your intention to do the same." (*Id.*)  Despite the terms of the Franchise Agreement and Winmark's letter, the Schneebergers never took any steps to attempt to renew their franchise.  (Murphy Decl., ¶ 13.)

As a gesture of good faith, Plaintiff sent the Defendants another letter dated January 1, 2013, granting them additional time to seek renewal of their Franchise Agreement, through January 15, 2013.   (Murphy Decl., Exh. 4.)  The letter stated plainly that the failure to renew would result in the immediate termination of their

---

[2] In reliance on the confidentiality and non-compete provisions of the Franchise Agreement, Winmark shared with the Schneebergers proprietary information concerning the operation of a sporting goods store consistent with the Business System.  (*Murphy Decl..*, ¶ 11.)  This information included Winmark's DRS computer system, which contains non-public information on buying and selling sporting goods and apparel. Among other things, the DRS computer system is the proprietary point of sale system through which Winmark provides franchisees sales and inventory information on new and used products such as product costs, suggested selling prices, anticipated margins, and the rate at which certain items sell or turn over. Evidence in the record show that receipts printed from the point of sale system display the Plaintiff's Marks.  (ECF No. 8-4.)

Franchise Agreement with no further notice. (*Id.*) Again, the Schneebergers declined to respond or take any steps toward renewal. The Franchise Agreement terminated automatically on January 15, 2013.

## D. The Schneebergers' Franchise Agreement contains post-termination obligations

To preserve its franchise business, Plaintiff Winmark takes steps to guard against terminated franchisees converting their franchises into independent competing businesses. (Murphy Decl., ¶ 16.) Specifically, the Franchise Agreement contains various terms that the parties agreed to that reflects that intent.

First, the Franchise Agreement prohibits the Schneebergers from continuing to use any of the Marks after termination. (Murphy Decl., ¶ 17.) Upon termination of the franchise, Schneebergers assumed an obligation to "modify both the exterior and interior appearance of the business premises so that they will be easily distinguished from the standard appearance of Play It Again Sports® Stores," including "(1) repainting the premises with totally different colors; [and] (2) removing all signs and other materials bearing the name "Play It Again Sports" and other Marks." (Murphy Decl., Exh. at ¶ 17.B.)

Second, the Franchise Agreement prohibits the Schneebergers from continuing to use Winmark's Data Recycling System point-of-sale and inventory management software. (*Id.*, at ¶ 17.A.) Third**,** the Franchise Agreement prohibits the Schneebergers from competing with Winmark in any sporting goods business for one year following termination and within an eight-mile radius of the Store. (*Id.*, at ¶ 18.B.)

### E.   Defendants have continued to operate the Store following termination of their Franchise Agreement

Despite the automatic termination of Schneebergers' Play It Again Sports® franchise on January 15, 2013, Defendants have continued to operate the Store with slight modifications in appearance and name. (Murphy Decl., ¶ 19.) In an effort to avoid the need for this lawsuit and motion, Winmark served a courtesy copy of its draft complaint on Defendant Todd Schneeberger on January 28, 2013, along with a letter demanding compliance with their post-termination obligations by January 30. (Murphy Decl., Exh. 5.) Winmark received no response to that letter.

On February 9, 2013, a private investigator who visited the Store found numerous Play It Again Sports® signs and logos visible throughout the Store. (Declaration of David Keil (ECF No. 8-4), at Exh. 1.) The main sign above the front door "had the appearance of having been blacked out with dark tape, so that only the words "Play" and "Sports" remain visible." (*Id.*) The investigator was able to make purchases from the Store, including a Play It Again Sports® gift card with the words "Play It Again" crossed out with a black marker. (*Id.*) In response to a question from the private investigator, Defendant Todd Schneeberger said that they "are experiencing some changes," and that they "hope to have a new name [for the store] soon, maybe next month." (*Id.*)

Based on the appearance of the receipts that the private investigator and others have obtained from the Store in recent weeks, it is apparent to Winmark that the Schneebergers are continuing to use Winmark's proprietary DRS point-of-sale and inventory system. (Murphy Decl., ¶ 22.)

**F.      Procedural Background**

On February 1, 2013, Plaintiff brought this action against Defendants alleging, *inter alia*, trade mark infringement in violation of the Lanham Act 15 U.S.C. §§ 1114, *et seq.* (ECF No. 1.)

On February 19, 2013, the Plaintiff filed the instant Motion for Preliminary Injunction. (ECF No. 8.)  Defendants have filed informal responses. (ECF Nos. 15 and 21.)  On February 26, 2013, the Court granted Plaintiff's unopposed Motion to consider the Motion for Preliminary Injunction on the papers.[3]  The Court vacated the evidentiary hearing scheduled for February 28, 2012 and directed the parties that Plaintiff's Motion for Preliminary Injunction (ECF No. 8) would be taken under advisement.

## II. ANALYSIS

Plaintiff Winmark's claims against the Schneebergers fall into two categories. These include: (1) Lanham Act and common law claims based upon Defendants' wrongful use of Winmark's Business System and Marks; and (2) common law claims based upon the Defendants' breach of the restrictive covenants in the Franchise Agreement.

For the reasons below, the Court grants Plaintiff's relief to the extent that it is tied to Plaintiff trade mark claim(s).  This includes claim one and claim two in the Complaint. (ECF No. 1 ¶¶22-29.)  The relief does not extend to the Plaintiff's arguments regarding Defendants wrongful use of Winmark's Business System unless use of that system (or

---

[3] In addition, Defendants had indicated in their Response (ECF No. 15) that the were unable to attend the February 28, 2013 evidentiary hearing, which provided a further reason to grant the Motion address on the papers.

production of receipts) displays Plaintiff's Marks.[4]  Nor does the relief extend to enforce the restrictive covenants at this time.  While the relief is more limited than what Plaintiff sought, it does not mean Plaintiff's claims—based on its Business Systems and the restrictive covenant—are without merit.  Rather, it simply means the Court expresses no opinion as to these arguments—and neither party should take the Court's silence as tacit approval or disapproval of how the evidence was considered; nor the merits of their positions.

In light of the above, and given the fluidity of the facts at this stage, the Court finds that the more prudent course is to: (1) grant relief that requires the immediate cessation of Defendants' use of the Marks inside and outside Defendants' Store; (2) grant leave to the parties to provide the Court with a Status Report on Defendants' Store on April 16, 2013 (this may include photographs from Defendants' store and receipts from same);[5] (3) grant leave to Plaintiff to refile any renewed motion for preliminary injunction on any argument (or evidence) that has not been addressed in this Order on or after April 16. 2013.

### A.     Legal Standard: Entitlement to Injunctive Relief

To prevail on a motion for injunctive relief, the movant must establish that four equitable factors weigh in his favor: (1) he is substantially likely to succeed on the

---

[4] The fact that Defendants have also indicated that they were "willing to have the store completely closed on March 14th." (ECF No. 15) because they are on a "month the month lease and would be able to liquidate the store and work out something with the landlord" was also a consideration not to assess all of Plaintiff's claim at this stage. (ECF No. 15.)

[5] See *id.*

merits; (2) he will suffer irreparable injury if the injunction is denied; (3) his threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest. *See Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1224 (10th Cir. 2009); *Greater Yellowstone Coalition v. Flowers*, 321 F.3d 1250, 1255 (10th Cir. 2003); *see also* Rule 65(a) of the Federal Rules of Civil Procedure. If the moving party demonstrates that the second, third, and fourth factors "tip strongly in his favor, the test is modified," and the moving party "may meet the requirement for showing success on the merits by showing that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue is [ripe] for litigation and deserving of more deliberate investigation."[6] *Okla. ex rel. Okla. Tax Comm'n v. Int'l Registration Plan, Inc.*, 455 F.3d 1107, 1113 (10th Cir. 2006). The moving party bears the burden of persuasion as to each of the four factors relevant to injunctive relief. *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003).

For the reasons that follow, the Court finds that Plaintiff has satisfied the four

---

[6] The Court notes that the continuing validity of this doctrine is questionable in light of *Winter v. Natural Res. Def. Council, Inc.*, 129 S.Ct. 365 (2008). *See Predator Intern., Inc. v. Gamo Outdoor USA, Inc.*, 669 F. Supp. 2d 1235, 1243 (D. Colo. 2009) (noting that *Winter* may affect the viability of the relaxed standard for success on the merits). However, since *Winter*, the Tenth Circuit has continued to refer to and employ the modified or relaxed injunctive relief standard. *See RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1209 n.3 (10th Cir. 2009). Accordingly, the relaxed standard appears to continue to be binding law in this circuit. *See San Luis Valley Ecosystem Council v. U.S. Fish and Wildlife Servs.*, 657 F. Supp. 2d 1233, 1239 n.1 (D. Colo. 2009) ("[T]he Tenth Circuit appears to recognize the continuing validity of the modified success-on-the-merits formula notwithstanding the *Winter* decision.") To the extent that it is required in this matter, Plaintiff would satisfied both standards with respect to their trade mark claims. (ECF No. 1 ¶¶22-29.)

factors below.

      1.    <u>Substantially Likely to Succeed on the Merits</u>

To demonstrate a substantial likelihood of success on the merits, Plaintiff is "required to present a *prima facie* case showing a reasonable probability that [it] will ultimately be entitled to the relief sought." *Salt Lake Tribune Pub.*, 320 F.3d at 1100. The Court finds that this factor sides with Plaintiff.

Under § 43(a) of the Lanham Act, a plaintiff has a "cause of action against any person whose use of a word, symbol or device is likely to cause confusion regarding the source or origin of the plaintiff's goods." *Predator Intern., Inc. v. Gamo Outdoor USA, Inc.*, 669 F. Supp. 2d 1235, 1244 (D. Colo. 2009). "It is well settled doctrine that a terminated franchisee's continued use of its former franchisor's trademarks, by its very nature, constitutes trademark infringement." *Big O Tires, LLC v. JDV, LLC*, 2008 WL 4787619 at *3 (D. Colo. 2008) (08-CV-1046-WYD) (*quoting Burger King Corp. v. Majeed*, 805 F.Supp. 994, 1002 (S.D. Fla. 1992).) "A franchisee who once possessed authorization to use the trademarks of its franchisor becomes associated in the public's mind with the trademark holder.  When such party loses its authorization yet continues to use the mark, the unauthorized use confuses and defrauds the public.  In cases involving terminated franchisees, the potential for consumer confusion is even greater than in cases of random infringement." *Paisa, Inc. v. N & G Auto, Inc.*, 928 F. Supp. 1004, 1008 (C.D. Cal. 1996); *see also U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1190 (6th Cir. 1997) ("unauthorized use of an original trademark by one whose license to use the trademark had been terminated is sufficient to establish 'likelihood of confusion'"); *Burger King Corp. v. Mason*, 710 F.2d 1480, 1492 (11th Cir.

1983) ("Common sense compels the conclusion that a strong risk of customer confusion arises when a terminated franchisee continues to use the former franchisor's trademarks.")

In this case, Defendants' right to use the Marks ceased upon termination of the Franchise Agreement. Defendants did not renew. Despite this, there is sufficient evidence in the record to show that Defendants are continuing to use Winmark's registered Marks —and are holding themselves 'out' to the public in a way that leads others to believe they are still associated with Play It Again Sports®. The reasons are two-fold.

First, Defendants' Store continue to display Winmark's trademarked "Chasing Arrows" design in the front window, among other areas inside the Store. This trade mark is distinctive of Plaintiff's branding. Its continued use—coupled with the continued use of the Play It Again Sports® signage inside the store—is such that would readily lead a consumer to be confused as to whether Plaintiff continues to endorse Defendants' use of the Marks (or not).

Second, the confusion is further heightened by the context within which the Marks are set—*i.e.* Defendants' Store continues to offer the identical types of merchandise to the same consumer base. The fact that customer receipts—that display the phrase Play It Again Sports—continue to be generated for consumers only reinforces the result against Defendants. (Murphy Decl., ¶ 22.)

In sum, there is sufficient evidence for the purposes of a *prima facie* case to show that ongoing use of Plaintiff's Marks may cause confusion. Such evidence presents a strong likelihood that Plaintiff will succeed on the merits of its trade mark

infringement claims. This makes injunctive relief an appropriate remedy with respect to these claims. See *Salt Lake Tribune Pub.*, 320 F.3d at 1100 (stating that the moving party is "required to present a *prima facie* case showing a reasonable probability that [it] will ultimately be entitled to the relief sought.")

    2.    <u>Irreparable Injury</u>

A party seeking injunctive relief "must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Heideman*, 348 F.3d at 1189. "Irreparable harm, as the name suggests, is harm that cannot be undone, such as by an award of compensatory damages or otherwise." *Salt Lake Tribune Publ'g Co. v. AT&T Corp.*, 320 F.3d 1081, 1105 (10th Cir. 2003). In the trademark context, "irreparable injury is ordinarily presumed once the plaintiff has established a likelihood of confusion." *Big O Tires, Inc. v. Bigfoot 4X4, Inc.*, 167 F. Supp. 2d 1216, 1227 (D. Colo. 2001).

Here, the Court finds there are sufficient facts to show that, with the issuance of a preliminary injunction, Plaintiff will likely suffer irreparable harm. *Cobra North Am., LLC v. Cold Cut Systems Svenska AB*, 639 F. Supp. 2d 1217, 1230 (D. Colo. 2008). First, the Court has found that there is *prima facie* evidence that creates a likelihood for confusion for customers who enter Defendants' store. Specifically, Plaintiff faces the risk of lost business and customer relationships because the Defendants are continuing to operate a sporting goods store at the same location, using substantially the same name with substantially the same goods. The chance for consumer confusion is not only high, but irreparable.

Second, there is a related concern for Plaintiff that warrants injunctive relief—that

is, there is evidence to show that a strong likelihood that customers are having a negative experience visiting the Defendants' Store post-termination. (ECF No. 8 at 14.) This inference is reasonable—particularly where Winmark no longer has any control over the quality of the goods and the branding associated with Defendants' store.

Third, Defendants expressly acknowledged in the Franchise Agreement "that damages alone cannot adequately compensate Franchisor if there is a violation of the franchise agreement." (Ex. 1 to Murphy Decl., at ¶ 18.D.) The Franchise Agreement provides that Franchisee (Defendants) stipulate that Franchisor (Plaintiff) would be irreparably harmed by a violation of same, and that injunctive relief "is essential and must be entered for the protection of Franchisor." (Murphy Decl., Exh. at ¶ 18.D.) Defendants signed the Franchise Agreement stating this (and also failed to mention this in any of their informal responses filed with the Court.) Because Defendants signed the Franchise Agreement, this, *inter alia*, forecloses any chance that Defendants could succeed on this factor.

Accordingly, the Court finds that Plaintiff will incur irreparable harm should injunctive relief not be granted. Since Defendants have failed to rebut this finding with evidence to the contrary, this factor tips heavily in Plaintiff's favor.

       3.      <u>Threatened Injury Outweighs the Injury of the Opposing Party</u>

This factor is an internal balancing test. It requires that "the possible harm to the Plaintiff if the injunction is not entered be balanced against the possible harm to the Defendant[s] if the injunction is entered." *Pelletier v. U.S.*, 2011 WL 2077828, at *3 (D.

Colo. May 25, 2011).[7]

The harm that Plaintiff will suffer if the injunction is *not* entered is discussed above (factor two). Plaintiff will be left irreparably harmed by continued use of the Marks in terms of (1) customer confusion, and (2) the potential risk of lost business and customer relationships through Defendants continued use of the Marks.

By contrast, if the injunctive relief *is* entered, there will be some harm to Defendants' business: it will no longer have a trade mark that connotes the same good will as the previous one—for example, *inter alia,* the Chasing Arrows design. *See General Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007).[8] This, however, does not diminish the strong case for a preliminary injunction because the injunction would merely prohibit Defendants from using Marks vested in Plaintiff. As such, the Schneebergers' ability to earn a living would not be unreasonably restricted by the injunction (absent the relevant Marks).

On balance, and given the purpose of the Lanham Act to prevent customer confusion, the Court finds that the threatened injury to Plaintiff outweighs the injury to that of Defendants in this case. Accordingly, the Court finds that Plaintiff has satisfied

---

[7] While not always taken into account, this factor has also been employed to consider the interests of third parties. *Ayres v. City of Chicago*, 125 F.3d 1010, 1013 (7th Cir. 1997) (Posner, C.J.) (holding that injunctive relief should be granted if the plaintiff faces "irreparable harm and the defendant very little harm unless third parties would be hurt" by the relief). Consideration of third parties naturally intertwines with the level of irreparable harm to Plaintiff—*i.e.*, the first factor; but, in this case, Plaintiff has offered no supporting evidence as to why there should be any consideration of this factor.

[8] Defendants must realize that a trade mark is a property right. Based on existing facts in the record, Defendants are effectively trespassing on Plaintiff's rights (and what makes it more serious at this stage, in terms of the equities, is that Plaintiff provided good faith gestures through January 15, 2013 to allow Defendants continued use of the their Marks provided they paid for the franchise fee.)

this prong of the test for injunctive relief.

    4.    <u>The Injunction Would Not Be Adverse to the Public Interest</u>

A party seeking a preliminary injunction must show the issuance of the injunction would not be adverse to the public interest. *Heideman*, 348 F.3d at 1188; *Wild Inc. v. U.S. Forest Service*, 523 F. Supp. 2d. 1213, 1219 (D. Colo. 2007).

Here, this factor weighs heavily in favor of Plaintiff. The purpose behind Lanham is to "prevent the likelihood of confusion from becoming an actuality, and to protect [trademark holders from] intentional copying by a competitor." *Studio 1712, Inc. v. Etna Products Co., Inc.*, 777 F. Supp. 844, 854 (D. Colo. 1991). Much of what has been said regarding the merits of this case (factor one) overlaps with the reasoning here.

Thus, in this case, issuance of the injunction would not be adverse to the public interest and only promote the purpose behind the relevant statute. Accordingly, the Court finds that Plaintiff has satisfied this prong of the test for injunctive relief.

### III. CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has satisfied all four factors to allow GRANT of a preliminary injunction. The Court ORDERS as follows:

    1.    Plaintiff's Motion for Preliminary Injunction (ECF No. 8) is GRANTED;

    2    Defendants are ORDERED to immediately cease and desist from using Plaintiff's Marks both inside and outside Defendant's Store, consistent with the terms of this Order;

    3.    If Defendants' Store has not closed on or before April 15, 2013, the parties are DIRECTED to provide the Court with a Status Report regarding the status of Defendants' Store at that time. This Status Report is to be filed no later than

April 17, 2013 (and may include photographs from Defendants' store and receipts from same); and

4. The Court GRANTS leave to Plaintiff to refile, if necessary and appropriate, any renewed motion for preliminary injunction on any argument (or evidence) that has not been addressed in this Order on or after April 16, 2013.

Dated this 19th day of March, 2013.

BY THE COURT:

William J. Martínez
United States District Judge